| | |
|---|---|
| 1 | Robert J. Nelson (CA 132797) |
|   | rnelson@lchb.com |
| 2 | Nimish R. Desai (CA 244953) |
|   | ndesai@lchb.com |
| 3 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
|   | 275 Battery Street, 29th Floor |
| 4 | San Francisco, CA 94111-3339 |
|   | Telephone: 415.956.1000 |
| 5 | Facsimile: 415.956.1008 |
| 6 | Marc G. Reich (CA159936) |
|   | mgr@reichradcliffe.com |
| 7 | Adam T. Hoover (CA 243226) |
|   | adhoover@reichradcliffe.com |
| 8 | REICH RADCLIFFE & HOOVER LLP |
|   | 4675 MacArthur Court, Suite 550 |
| 9 | Newport Beach, CA 92660 |
|   | Telephone: (949) 975-0512 |
| 10 | Facsimile: (949) 975-0514 |

```
FILED
CLERK, U.S. DISTRICT COURT
5/24/2019
CENTRAL DISTRICT OF CALIFORNIA
BY:       CB       DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

[UNDER SEAL],

    Plaintiffs,

v.

[UNDER SEAL],

    Defendants.

Case No. 15-cv-7760-AB (JEMx)

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

~~FILED IN CAMERA AND~~ **UNDER SEAL PURSUANT TO 31 U.S.C. 3730**

1728402.1

SECOND AMENDED COMPLAINT

Robert J. Nelson (CA 132797)
rnelson@lchb.com
Nimish R. Desai (CA 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Marc G. Reich (CA159936)
mgr@reichradcliffe.com
Adam T. Hoover (CA 243226)
adhoover@reichradcliffe.com
REICH RADCLIFFE & HOOVER LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512
Facsimile: (949) 975-0514

*Attorneys for Relators*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES ex rel. ATUL MAITHEL and ANDRE GALVAN, and on behalf of the STATE OF CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>VENTURA COUNTY MEDI-CAL MANAGED CARE COMMISSION d/b/a GOLD COAST HEALTH PLAN; DIGNITY HEALTH; VENTURA COUNTY MEDICAL CENTER; and CLINICAS DEL CAMINO REAL, INC.,<br><br>Defendants. | Case No. 15-cv-7760-AB (JEMx)<br><br>**SECOND AMENDED COMPLAINT**<br><br>False Claims Act, 31 U.S.C. § 3729, *et seq.*<br><br>**DEMAND FOR JURY TRIAL**<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. 3730** |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | JURISDICTION | 1 |
| III. | PARTIES | 2 |
| IV. | BACKGROUND AND REGULATORY FRAMEWORK | 3 |
| V. | FACTUAL ALLEGATIONS | 4 |
| VI. | CAUSES OF ACTION | 8 |
| VII. | PRAYER FOR RELIEF | 13 |

I. **INTRODUCTION**

1. This case involves Medicaid funds Defendant Ventura County Medi-Cal Managed Care Commission, doing business as the Gold Coast Health Plan, should have set aside for payment back to the State of California (and thus the United States) in June 2016, but which it instead paid out to favored providers under false pretenses.

2. Gold Coast is required to return to the State a certain percentage of monies that it does not use on "allowed medical expenses" related to newly-enrolled Medi-Cal recipients, called the "Adult Expansion" population. Instead, of the $203 million Gold Coast realized it would owe the government in June 2016, it allocated approximately $63 million to favored providers for alleged past services. To date, it has paid out almost $52 million under this scheme. This sum is *in addition to* contractual payments GCHP had already made to the providers.

3. Though Gold Coast claimed it would seek documentation from the providers to justify the payments for these so-called "additional" past services, it has largely ignored that requirement. Indeed, the reimbursement amounts were determined months *before* any documentation of services was provided, using a simplistic *pro rata* formula.

4. The net result is that providers were paid tens of millions of dollars for services that they did not document and likely did not perform (as discussed in further detail below), and Gold Coast decreased the amount of funds it owed back to the State.

II. **JURISDICTION**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3732, and 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Defendants, because Defendants have systematically, continuously, and purposefully availed themselves of the privilege of doing business in California and in this District, and because Defendants' acts giving rise to the violations alleged occurred in California and in this District. This Court also has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in

1  which any act proscribed by section 3729 occurred." During the relevant period, each of the
2  Defendants transacted business in this District.

3      7.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C.
4  § 1391(b) because at least one Defendant can be found in, resides in, and transacts business in the
5  this District, because a substantial part of the events or omissions which give rise to the claims
6  alleged herein occurred in this District, and because at least one Defendant is subject to this
7  Court's personal jurisdiction with respect to this action.

## III. PARTIES

9      8.    Relators are former employees of Gold Coast Health Plan and have personal
10  knowledge of the facts alleged in this Complaint. Relators are not aware of any "public
11  disclosure" in connection with the false claims alleged in this Complaint, as defined in 31 U.S.C.
12  § 3730(e)(4)(A). Further, Relators each qualify as an "original source" under § 3730(e)(4)(B)
13  because: (1) they voluntarily disclosed to the Government the information on which allegations or
14  transactions in a claim are based prior to any purported public disclosure, and/or (2) Relators have
15  knowledge which is both direct and independent of any public disclosures to the extent any may
16  exist, and Relators voluntarily provided the information to the Government before filing this
17  action. In particular, Relators' knowledge was acquired through direct participation and access to
18  internal documentation of the facts described herein, as well as related private conversations with
19  Defendants and their employees.

20      9.    Defendant Ventura County Medi-Cal Managed Care Commission ("VCMCMCC")
21  is a public entity doing business as Gold Coast Health Plan ("Gold Coast"). Gold Coast is a
22  county organized health system ("COHS") that operates under a legislative scheme set forth in
23  California Welfare and Institutions Code sections 14087.5 to 14087.93 to administer California
24  Medicaid (Medi-Cal) services in Ventura County.

25      10.    Defendant Dignity Health is a California corporation doing business in Ventura
26  County as St. John's Regional Medical Center and St. John's Pleasant Valley Hospital.

27      11.    Defendant Ventura County Medical Center ("VCMC") is a medical system based
28  in Ventura County.

1  12. Defendant Clinicas del Camino Real, Inc. is a California corporation that operates health centers throughout Ventura County.

13. Together, Dignity, VCMC, and Clinicas are referred to as the "Provider Defendants."

### IV. BACKGROUND AND REGULATORY FRAMEWORK

14. VCMMCC is run by a group of commissioners "comprised of locally elected officials, Providers, hospitals, clinics, the county healthcare agency and consumer advocates." Ventura County Medi-Cal Managed Care Commission, available at https://www.goldcoasthealthplan.org/about-us/ventura-county-medi-cal-managed-care-commission.aspx (last visited Sept. 29, 2015).

15. Gold Coast is a county organized health system ("COHS") that operates under a legislative scheme set forth in California Welfare and Institutions Code sections 14087.5 to 14087.93 to administer California Medicaid (Medi-Cal) services in Ventura County.

16. A COHS operates under a contract negotiated by the California Department of Health Services on behalf of the state. Welf. & Inst. Code, § 14087.5(a), (c)(1). Rather than operating under specific statutory mandates, the COHS is bound by the rules, terms, and conditions negotiated under the contract. *Id.* § 14087.55. Statutory provisions and related regulations apply to the COHS to the extent they are incorporated into the relevant contracts.

17. A COHS is paid on a capitated basis for each Medi-Cal recipient, regardless of the level of services used by each recipient. In turn, the health system assumes the financial risk of its members' care and pays health service providers directly. Welf. & Inst. Code, § 14087.6.

18. Section 14087.6 also confers upon counties operating a COHS broad authority to determine the manner in which it reimburses care providers. Thus, a COHS has authority to negotiate a broad range of payment terms with health care providers, subject to the restrictions that the amount payable not exceed the estimate under the Medi-Cal fee-for-service program, or otherwise violate the terms of its contract with the State. *Id.* § 14087.6. The state may also monitor each COHS as to the level and quality of services rendered, the costs incurred, and compliance with federal law. Welf. & Inst. Code § 14087.8.

19. Gold Coast's contract with the State incorporates medical loss ratio ("MLR") requirements specifically for the Adult Expansion funds. Pursuant to those terms, Gold Coast is required to expend at least 85 percent of funds from the State on allowed medical expenses for Adult Expansion members, and if it does not, to return the difference between 85 percent of total Adult Expansion funds and actual allowed medical expenses incurred.

20. According to the contract, allowed medical expenses include actual expenses incurred and accounted for in accordance with Generally Accepted Accounting Principles (GAAP) for Covered Services delivered to Members during each period, including expenses incurred for utilization management and quality assurance activities, shared risk pools, incentive payments to providers, and excluding administrative costs as defined in Title 28 CCR Section 1300.78.

21. The contract stipulates that DHCS will conduct the MLR calculation one year after the end of an incurred period in order to ensure processing of all relevant claims during the incurred period. For the first incurred period, January 1, 2014 to June 30, 2015, the MLR calculation will take place on June 30, 2016.

## V. FACTUAL ALLEGATIONS

22. The first "incurred period" for the MLR calculation was from January 1, 2014 to June 30, 2015. In or about April 2015, Gold Coast personnel recognized that Gold Coast would owe approximately $203 million back to DHCS pursuant to the MLR provisions, given the large difference between paid claims and projected "incurred but not reported" claims on one hand, and the total amount provided to Gold Coast for adult expansion members on the other.

23. By May 2015, Gold Coast devised a plan to distribute a sizable portion of the surplus funds to providers operating in its territory, Ventura County. VCCMC approved the "Adult Expansion Non-Contract Reimbursement Policy," effective June 1, 2015, which set out a procedure for making additional payments to providers beyond anything contemplated in Gold Coast's contracts with those providers. These additional payments came to be known as Adult Expansion (AE) Enhancement Capitation.

1  24.  The policy states that if all of a number of conditions are met, Gold Coast would "reimburse Providers on a case-by-case for specified Services rendered." Among those requirements were that the provider "provided specified Services to Members," the provider was not "contractually or otherwise obligated to provide the Services," the provider would not receive alternate compensation for the Services, the provider submits "written documentation that details the Services provided by the Provider in such form and content as requested by the Plan [Gold Coast]," and Gold Coast "verifies that the Services specified were actually provided by Provider."

25.  These requirements were echoed in administrative procedures for the Adult Expansion Non-Contract Reimbursement Policy. All reimbursement requests were to be submitted on specified forms attached to the administrative procedures, and Gold Coast staff were to review any such request to ensure compliance with the Policy, including by "verifying information supporting all findings."

26.  Despite developing policies and procedures that permitted payment only for documented and verified services, Gold Coast did not actually require providers to comply with them, and it apparently never intended to require compliance. Instead, by April 30, 2015, months before documentation was provided or enhancements were paid, it had already predetermined how it would divide excess funds. Tellingly, when providers received the enhancement payments, they almost exactly matched the amounts pre-determined in April 2015, showing how little the payments were tied to any services actually provided or documented.

27.  Gold Coast allocated tens of millions of dollars to providers based on this predetermined formula that had no connection to services provided. Again, these payments were above and beyond anything Gold Coast had already paid these providers for actual services rendered pursuant to their contracts. Exactly as planned, these enhancement payments brought Gold Coast's MLR into compliance with the contract. The Provider Defendants each received substantial sums pursuant to this scheme: $30.1 million to VCMC, $8.2 million to Dignity, and $9.8 million to Clinicas.

28.  To date, the Provider Defendants have provided little to no documentation of services provided to Gold Coast's Adult Expansion members that would justify these payments.

Relators understand through conversations with personnel at Gold Coast and at the Provider Defendants that the providers are highly unlikely to have sufficient support for the payments. Defendant VCMC has openly expressed concern at potentially losing part of the $30.1 million should an audit take place, and is reportedly seeking an increase in future rates with Gold Coast to offset that risk. Likewise, a Dignity employee with knowledge of this situation has expressed doubt about whether it could justify its $8.2 million payment. Finally, Clinicas provided a vague, 2-page summary of services along with its request for the pre-determined $9.8 million, apparently without any effort to describe how many encounters or health care visits were attributable to treatment of Gold Coast Adult Expansion members that would not have been otherwise compensated through the provider contract or other sources.

29. Tellingly, Gold Coast's reimbursement policy requires any providers accepting enhancement funds to indemnify Gold Coast against any effort by the government to seek reimbursement of the funds. The Dignity documents formalizing the payments expressly reference this indemnification requirement. This highlights the Defendants' collective knowledge that this additional "AE enhancement" payment – made even before adequate documentation of services had been provided – was dubious at best.

30. Notably, the Commission that oversees Gold Coast is comprised principally of provider representatives. This includes Antonio Alatorre and Gagan Pawar of Clinicas, which received $9.8 million in payments, David Araujo of Ventura County Medical Center ($33.8 million), and Darren Lee of Dignity Health ($8.2 million). In other words, faced with a tremendous surplus of money that should have been set aside for return to the government, it appears that commissioners responsible for the operation of Gold Coast instead found a way to divert those funds to the providers which they represented.

31. Finally, Gold Coast has also devised supplemental capitated payments to participating providers on a going forward basis using the same *pro rata* formula. In Commission meeting minutes, Gold Coast described this as "enhanced capitation" that "covers services that are not currently included in an existing contract." The enhancements would be paid pursuant to contract amendments, and Gold Coast stated that "the Plan will determine the per member/per

month (pmpm) rate based on the value of the services provided." Once again, however, the touchstone was not actual services provided, but, rather, the same, simple *pro rata* formula that informed the enhancement payments for the first incurred period. So far, to Relators' knowledge, Gold Coast has booked $6 million in these going forward enhanced AE payments.

32. On multiple occasions, Relator Maithel raised concerns that Gold Coast's accounting and claims handling practices would cause it to severely underestimate amounts it would owe the government pursuant to the MLR provisions. Each time, Relator's concerns were dismissed without explanation. Further, management responded by retaliating against Relator: accusing him of being difficult to work with in an impromptu meeting, placing him on administrative leave, giving him unjustified negative performance reviews based on false factual bases, denying him merit pay increases, and, ultimately, so thoroughly isolating from his coworkers and job responsibilities that Relator had no choice but to resign under protest.

33. On multiple occasions from 2015 up to his termination in May 2017, various Gold Coast managers confronted Relator Galvan about the additional adult expansion payments, his role in the underlying agreements, any data submitted by providers relate to the payments, and his relationship to Relator Maithel, who they described as being opposed to the payments. These requests were unusual and suspicious because Gold Coast knew Relator Galvan had no role in any aspect of the additional payments, and because of the "guilt by association" inferred by their reference to Relator Maithel, who was outspoken in his opposition to the payments and resigned over protest.

34. These confrontations by Gold Coast management coincided with an increasingly hostile work environment for Relator Galvan. This included false accusations of workplace misconduct leveled by a special consultant to the CEO (outside of the regular HR process); biased, demonstrably false, and uniformly negative annual performance reviews written by a consultant, not Galvan's supervisor; the denial of raises and bonus pay; exclusion from meetings integral to his job functions; the elimination of staff and resources needed for Relator to have properly performed his job duties; assignment to menial tasks outside his job duties; placement on a performance improvement plan with highly unrealistic expectations and based on false

accusations of poor work performance; the creation of a hostile work environment that forced Relator into medical leave; and, ultimately, termination of Relator Galvan's employment while on medical leave in May 2017.

35. Gold Coast's persistent efforts to degrade the terms and conditions of Relator Galvan's employment, up to and including termination, was also the product of unlawful racial and national origin discrimination, and retaliation for Relator's efforts to speak out against discriminatory conduct in the workplace. Relator actively spoke out about racism in the workplace. After, and because of, raising concerns of racism against people of Mexican descent in 2011, Relator was demoted from his position as Director of Member Services. Likewise, in 2013, Relator served as a witness and complainant in an investigation of widespread racism at Gold Coast undertaken by the nonprofit organization LULAC. At that time, Relator was placed on administrative leave based on fabricated incidents of workplace misconduct. Notably, of the six employees who participated in the LULAC investigation, only one was still working at Gold Coast following Relator Galvan's termination in May 2017. Relators' formal complaints in 2011 and 2013 followed regular incidents of racially motivated misconduct against minority employees, as well as persistent failure by Gold Coast to treat minority employees, including Relator, fairly with respect to pay and promotions.

36. Aside from the disruption caused by Gold Coast's discriminatory and retaliatory conduct, Relator Galvan was performing competently in his position at Gold Coast.

37. Relator was terminated on May 30, 2017, submitted his administrative complaint to the Department of Fair Employment and Housing on May 26, 2018, and obtained a right to sue notice dated May 29, 2018.

## VI. CAUSES OF ACTION

### COUNT I

### False Claims Act, 31 U.S.C. § 3729, *et seq.*

### (Against All Defendants)

38. Relators incorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

39. This is a civil action brought by Relators, on behalf of the United States of America against Defendants under the False Claims Act, 31 U.S.C. §3730(b)(1).

40. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented or caused to be presented, and may still be presenting or causing to be presented false or fraudulent claims for payment or approval under the Medicaid program to officers, employees, or agents of the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(A).

41. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false or fraudulent records and/or statements to get false or fraudulent claims paid under the Medicaid program in violation of 31 U.S.C. § 3729(a)(1)(B).

42. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the Government under the Medicaid program, in violation of 31 U.S.C. § 3729(a)(1)(G).

43. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money or property to the United States Government under the Medicaid program, in violation of 31 U.S.C. § 3729(a)(1)(G).

44. The United States, unaware of the falsity of the claims and/or statements made or caused to be made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for medical care and related management services for recipients of Medicaid health insurance programs, and may receive less than the total amount of funds owed to it by Defendants.

1  45.  As a result of Defendants' actions as set forth above, the United States has been,
2  and may continue to be, severely damaged.

## COUNT II

### California False Claims Act, Cal. Gov't Code § 12650, *et seq.*

### (Against All Defendants)

6  46.  Relator incorporates by reference the preceding paragraphs of the Complaint as
7  though fully set forth herein.

8  47.  This is a civil action brought by Relator on behalf of the State of California against
9  Defendants under the California False Claims Act, Cal. Gov. Code § 12652(c).

10  48.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
11  the information involved, or with actual knowledge of the falsity of the information, presented, or
12  caused to be presented to, and may still be presenting or causing to be presented to, an officer or
13  employee of the State of California or its political subdivisions, false or fraudulent claims for
14  payment, in violation of Cal. Gov. Code § 12651(a)(1).

15  49.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
16  the information involved, or with actual knowledge of the falsity of the information, made, used
17  or caused to be made or used, and may still be making, using or causing to be made or used, false
18  records or statements to get false or fraudulent claims paid or approved in violation of Cal. Gov.
19  Code § 12651(a)(2).

20  50.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
21  the information involved, or with actual knowledge of the falsity of the information, made, used
22  or caused to be made or used, and may still be making, using or causing to be made or used, false
23  records or statements material to obligations to pay or transmit money or property to the State of
24  California or its political subdivisions in violation of Cal. Gov. Code § 12651(a)(7).

25  51.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
26  the information involved, or with actual knowledge of the falsity of the information, concealed or
27  improperly avoided or decreased, and may still be concealing or improperly avoiding or
28

decreasing, obligations to pay or transmit money or property to the State of California or its political subdivisions in violation of Cal. Gov. Code § 12651(a)(7).

52. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, conspired to commit the violations of subsections (1), (2), and (7) as described above, in violation of Cal. Gov. Code § 12651(a)(3).

53. The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made or caused to be made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for medical care and related management services for recipients of Medicaid health insurance programs, and may receive less than the total amount of funds owed to it by Defendants.

54. As a result of Defendants' actions as set forth above, the State of California, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT III

**False Claims Act, 31 U.S.C. § 3730(h)**

**(Against Defendant Gold Coast)**

55. Relators incorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

56. During the course of their employment, Relators were discriminated against in the terms and conditions of their employment by Gold Coast, all in retaliation for lawful acts taken by Relators to report violations of the False Claims Act and in retaliation for other lawful acts taken by Relators in furtherance of an action under the False Claims Act.

57. Gold Coast's retaliatory acts have proximately caused Relators to suffer and to continue to suffer substantial damage in an amount to be proven at trial.

## COUNT IV

**California False Claims Act, Cal. Gov't Code § 12653**

**(Against Defendant Gold Coast)**

58. Relators incorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

59. During the course of their employment, Relators were discriminated against in the terms and conditions of their employment by Gold Coast, all in retaliation for lawful acts taken by Relators to report violations of the California False Claims Act and in retaliation for other lawful acts taken by Relators in furtherance of an action under the Act.

60. Gold Coast's retaliatory acts have proximately caused Relators to suffer and to continue to suffer substantial damage in an amount to be proven at trial.

## COUNT V

### California Labor Code 1102.5

### (Against Defendant Gold Coast)

61. Relators incorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

62. During the course of their employment, Defendant Gold Coast violated California Labor Code § 1102.5(a)-(c) because it: made, adopted, and/or enforced rules, regulations, and/or policies preventing Relators from disclosing information about Gold Coast's violation and/or noncompliance with state statute, federal statute, and/or local, state, or federal rule or regulation; retaliated against Relators for disclosing (and attempting to disclose) said information; and retaliated against Relators for refusing to participate in the violations and noncompliance.

63. Gold Coast's actions have proximately caused Relators to suffer and to continue to suffer substantial damage in an amount to be proven at trial.

## COUNT VI

### California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940

### (By Relator Galvan Against Defendant Gold Coast)

64. Relator Galvan incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

65. Under the FEHA, it is unlawful for an employer "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of a person's race,

gender, or physical disability. Cal. Gov. Code § 12940(a).

66. Relator Galvan is a racial minority and a member of a protected class.

67. Relator was performing competently in Relator's position at Gold Coast.

68. Relator suffered the adverse employment actions described herein, up to and including termination.

69. Defendant Gold Coast acted with discriminatory motive in affecting the adverse employment actions, and lacked any legitimate non-discriminatory reasons for the actions. Any purported legitimate, non-discriminatory reasons are in fact false (factually untrue) and merely a pretext for discrimination.

70. Under the FEHA, it is also prohibited for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring in the workplace." Cal. Gov. Code § 12940(k).

71. Relator was subjected to discrimination, harassment, and retaliation which Defendant Gold Coast failed to take all reasonable steps to prevent, and which caused Relator harm.

72. The FEHA also prohibits retaliation in response to protected activity. Relator engaged in the protected activity of reporting unlawful discrimination and fraud against the government. Defendant Gold Coast subjected Relator to adverse employment actions in response to this protected activity, including terminating Relator's employment.

## VII. PRAYER FOR RELIEF

WHEREFORE, Relators pray for judgment against Defendants as follows:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating the FCA;

B. That judgment be entered in the United States of America's favor and against Defendants in the amount of each and every false or fraudulent claim or retention of funds, multiplied as provided for in 31 U.S.C. § 3729(a)(1), plus a civil penalty of not less $5,500 or more than $11,000 per claim or violation as provided by 31 U.S.C. § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, to the extent such multiplied

penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

    C.    That judgment be entered in California's favor and against Defendants in the amount of each and every false or fraudulent claim or retention of funds, multiplied as provided for by the California False Claims Act, plus civil penalties in the ranges provided by the Act.

    D.    That Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and Cal. Gov't Code § 12652(g), that Relators be granted all relief available pursuant to 31 U.S.C. § 3730(h), Cal. Gov't Code § 12653, and Cal. Labor Code §§ 1102.5, 1105; and that Relator Galvan be granted all relieve available pursuant to Cal Gov't Code § 12940 et seq., including but not limited to backpay, frontpay, tax gross-ups, reinstatement, damages for pain and suffering, punitive damages, and attorneys' fees and costs.

    E.    That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

    F.    That judgment be granted for Relators against Defendants for all costs, including, but not limited to, court costs, litigation costs, expert fees, and all attorneys' fees incurred by Relators in the prosecution of this suit; and

    G.    That Relators be granted such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Relators demand a jury trial for all claims and issues so triable.

Dated: May 24, 2019          Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____
      Robert J. Nelson

Robert J. Nelson (CA 132797)
rnelson@lchb.com
Nimish R. Desai (CA 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Marc G. Reich (CA159936)
Adam T. Hoover (CA 243226)
REICH RADCLIFFE & HOOVER LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512
Facsimile: (949) 975-0514

*Attorneys for Relators*